DA 13-0853

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 267

BEAVERHEAD COUNTY, a political
subdivision of the State of Montana,

        Plaintiff and Appellant,

  v.

MONTANA ASSOCIATION OF COUNTIES
JOINT POWERS INSURANCE AUTHORITY,

        Defendant and Appellee.

APPEAL FROM:    District Court of the Fifth Judicial District,
                      In and For the County of Beaverhead, Cause No. DV-13-13666
                      Honorable Brenda R. Gilbert, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Andrew P. Suenram, Adam M. Shaw, Erb & Suenram, PLLC; Dillon,
                Montana

        For Appellee:

                Gary M. Zadick, Ugrin, Alexander, Zadick & Higgins, P.C.; Great Falls,
                Montana

                                Submitted on Briefs:  September 17, 2014
                                      Decided:  October 7, 2014

Filed:

                                Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1    Beaverhead County (County) appeals from the order of the Montana Fifth Judicial District Court, Beaverhead County, granting summary judgment in favor of the Montana Association of Counties Joint Powers Insurance Authority (MACo).  We affirm.

## ISSUES

¶2    We review the following issues:

*1.  Did the District Court err by granting summary judgment on the issue of MACo's duty to defend?*

*2.  Did the District Court err by considering the insurance policy's Exclusion 23 when granting summary judgment?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    In 2009, the County invited interested persons to submit bids for the Blacktail Deer Creek Stream Rehabilitation and Bridge Replacement Project.  Coleman Construction (Coleman) submitted a bid, and the County subsequently selected Coleman to complete the project.  However, Coleman was unable to finish the project on time or for the amount of money that it originally estimated.

¶4    Coleman sued for damages, filing a complaint against the County on April 4, 2011. Coleman asserted ten claims for relief.  Seven of these claims expressly alleged a breach of contract, asked for relief from the contract, or asked for reformation of the contract.  The other three claims, claims 1-3, stated:

2

First Claim for Relief
(Negligent Misrepresentation)
.   .   .

37. Defendants knew or should have known that certain material representations contained in the Contract Documents were not true.
.   .   .

41. Defendants' negligent representations, both expressed and implied, materially affected the cost and time necessary to perform the work . . . .

Second Claim for Relief
(Negligence)
.   .   .

43. Under applicable codes and industry standards, Defendants had a duty of care to Coleman, as a general contractor and prospective bidder, to exercise appropriate care when preparing Contract Documents for the purpose of inviting the submission of secured bids.

44. Defendants[] each and severally breached their duty of care by preparing and providing Contract Documents that contain material defects and were not otherwise prepared in compliance with applicable codes or industry standards.

45. Defendants' negligence materially impacted the cost and time actually necessary to perform the work, causing Coleman to suffer damages, costs, fees, and expenses . . . .

Third Claim for Relief
(Professional Negligence)
.   .   .

48. In order to have his bid considered Coleman was required under the terms of the Contract Documents to follow plans and specifications prepared by Defendants and to post and bond for bids and the performance of work, and to comply with other specified conditions.

49. Coleman submitted a secured bid, obtained the required bond(s) and satisfied other conditions imposed by Defendants on bidders for the Blacktail Project.

50. Because Coleman was required to rely on and conform to the Contract Documents, to provide a secure bid, bond its work, and otherwise comply with Contract Documents prepared by Defendants, Defendants owed Coleman a higher duty of care as professional engineers.

3

¶5     On April 5, 2011, the County notified MACo, in writing, of Coleman's complaint and provided MACo with a copy of the complaint. MACo is a joint risk insurance pool comprised of Montana counties, and the County carried an insurance policy with it. The County's letter requested that, pursuant to its insurance policy, MACo defend and indemnify the County from the claims against it.

¶6     MACo's attorney responded with a preliminary decision on April 13, 2011, recommending that coverage be denied. MACo's claims administrator confirmed the denial with a final decision on April 20, 2011. In their communications, both MACo's attorney and its claims administrator cited Exclusions 12 and 15 of the MACo JPIA Manuscript Liability Policy. Exclusion 12 reads: "This policy does not insure against: . . . . Any claim arising out of a claimed breach of contract or for breach of contract against the Insured." Exclusion 15 was applied to deny coverage to claim 10 of the complaint only. This denial was not contested and is not relevant to the present action.

¶7     Both the preliminary and final decisions denying coverage reasoned that "[e]ach of the claims for relief is clearly based on Beaverhead County's contract with Coleman and accordingly falls under this exclusion." Although MACo recognized that the first three claims in the complaint were labelled as requests for relief from negligence, it decided, having examined the complaint and citing this Court's decision in *Town of Geraldine v. Montana Mun. Ins. Auth.*, 2008 MT 411, 347 Mont. 267, 198 P.3d 796, that the acts giving rise to the claims were based on contract, rather than tort. Accordingly, it denied coverage.

4

¶8     Following MACo's denial of coverage, the County hired an attorney to defend it against Coleman's claims.  On June 27, 2011, that attorney sent a letter to MACo on the County's behalf.  It included his analysis of Coleman's complaint and asserted that it triggered MACo's duty to defend the County under the County's insurance policy. Follow-up letters were sent on August 10, 2011 and September 20, 2011.  While discussing MACo's legal obligations, none of these letters provided any facts that were not already included in Coleman's complaint.  Another letter was sent on May 23, 2012.  It included Coleman's responses to interrogatories, in which he explained the factual basis for his claims against the county.  While enumerating the specific instances of breach, Coleman did not change his position in the interrogatory responses.  He continued to base his claims of negligent misrepresentation, negligence, and professional negligence on representations in the contract documents.  The County sent a final letter to MACo on December 5, 2012, again asking MACo to reconsider coverage and suggesting that the County could pursue legal remedies if MACo did not defend and indemnify it in the action against Coleman.

¶9     MACo responded to these letters on December 10, 2012.  It continued to contend that the claims against the county were excluded from coverage based upon Exclusion 12. MACo also cited Exclusion 23 as an additional basis for denying coverage of claims 1-3. Exclusion 23 states that the policy does not insure against: "Any claim . . . for faulty preparation of bid specifications or plans . . . ."

¶10    On January 16, 2013, the County filed a complaint against MACo in district court, alleging, among other things, that MACo violated its duty to defend.  On May 10, 2013,

5

MACo filed a motion for summary judgment. The County filed its own motion for summary judgment on May 23, 2013. Resolving these cross motions for summary judgment, the District Court granted summary judgment in favor of MACo. It ruled that MACo did not have a duty to defend, reasoning that Exclusions 12 and 23 each provided sufficient independent bases for denying coverage. The County appeals.

## STANDARD OF REVIEW

¶11 We review a district court's ruling on a motion for summary judgment de novo. *Newman v. Scottsdale Ins. Co.*, 2013 MT 125, ¶ 20, 370 Mont. 133, 301 P.3d 348. Doing so, we apply the same rule as the district court, M. R. Civ. P. 56, which states that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3); *Newman*, ¶ 20.

## DISCUSSION

¶12 *1. Did the District Court err by granting summary judgment on the issue of MACo's duty to defend?*

¶13 The County argues that the District Court erred by granting summary judgment in favor of MACo. It contends that MACo's duty to defend was triggered because MACo could not unequivocally demonstrate that the claim was not covered by the insurance policy, based on Coleman's complaint, the letters the County sent to MACo, and Exclusion 12. We disagree.

¶14 The duty to defend arises when a complaint against an insured alleges facts which, if proved, would result in coverage under an insurance policy. *Tidyman's Mgmt. Servs. v. Davis*, 2014 MT 205, ¶ 22, 376 Mont. 80, 330 P.3d 1139; *Farmers Union Mut. Ins. Co. v. Staples*, 2004 MT 108, ¶ 20, 321 Mont. 99, 90 P.3d 381. The insurer has no obligation to look beyond the complaint in determining whether a claim is covered by a policy, but it cannot ignore other information actually obtained. *Newman*, ¶ 56; *Staples*, ¶ 24. Unless it unequivocally demonstrates, based on the information before it, that the claim against an insured does not fall within the insurance policy's coverage, the insurer has a duty to defend. *Tidyman's*, ¶ 23; *Staples*, ¶ 24.

¶15 Here, MACo had notice of Coleman's complaint and, from the excerpts of Coleman's interrogatory responses, of some of the specific conduct that Coleman believed gave rise to the allegations. Based on this information, there was an unequivocal demonstration that Coleman's claims against the County did not fall within MACo's coverage.

¶16 In particular, claims 1-3, the only claims at issue in the present case, were not covered by the policy, due to Exclusion 12. That provision of the insurance policy excluded from coverage claims arising from breach of contract. Although claims 1-3 of Coleman's complaint were described as tort claims, this description alone does not influence our analysis. We have held that the acts giving rise to the complaint, and not the complaint's legal theories or conclusory language, form the basis for coverage. *Geraldine*, ¶ 24. Since claims 1-3 arose from breach of contract, they were not covered by the insurance policy.

¶17    In *Geraldine*, we held that a breach of contract exclusion was properly relied upon to deny coverage of claims that the insured asserted were claims of negligent misrepresentation and constructive fraud.    Reasoning that the statement that was allegedly negligent misrepresentation was the same statement that created the insured's contract, we held that "the factual basis for [the negligent misrepresentation claim] is the . . . contract . . . and, as such, defense of th[e] claim is excluded."    *Geraldine*, ¶ 25.    We also held that the constructive fraud claim was excluded from coverage as a breach of contract claim, reasoning that constructive fraud requires a breach of duty and that any duty the insured owed "arose from the contract."  *Geraldine*, ¶¶ 31-32.

¶18    Similarly, the factual basis for claims 1-3 in the present case was the contract between the County and Coleman.  In claim 1, ostensibly a claim for negligent misrepresentation, Coleman alleged that the County "knew or should have known that certain material representations contained in the Contract Documents were not true."  As in *Geraldine*, the statement that allegedly constituted negligent misrepresentation was part of the contract. Thus, the factual basis for claim 1 was the contract with Coleman, and coverage of claim 1 was properly denied as a breach of contract claim.

¶19    In claim 2, ostensibly a claim for negligence, Coleman alleged that the County owed Coleman "a duty of care . . . as a general contractor and prospective bidder," and that the County breached that duty by "preparing and providing Contract Documents that contain[ed] material defects and were not otherwise prepared in compliance with applicable codes or industry standards."  The interrogatories provided to MACo enumerate the alleged defects.

As in *Geraldine*, this claim was properly excluded from coverage as a breach of contract claim. Even if there were industry standards and codes that specified the *level* of care due to Coleman, any duty that the County owed to Coleman arose from their contractual relationship. Additionally, the defects constituting the alleged breach were part of the contract itself. Thus, as in *Geraldine*, the factual basis for claim 2 was the contract. Coverage of claim 2 was properly denied as a breach of contract claim.

¶20 In claim 3, ostensibly a claim for professional negligence, Coleman alleged that because he "was required to rely on and conform to the Contract Documents . . . prepared by [the County], [the County] owed Coleman a higher duty of care as professional engineers." In the interrogatories provided to MACo, Coleman specified the instances in which he thought the duty of care was breached. As with claim 2 and as in *Geraldine*, any duty owed to Coleman arose from their contractual relationship. Even if the County owed Coleman the *level* of care required of a professional engineer, the factual basis of claim 3, as in *Geraldine*, was the contract and not custom, code, or common law. Coverage of claim 3 was properly denied as a breach of contract claim.

¶21 For the foregoing reasons, there was an "unequivocal demonstration" that the claims against the County were not covered by its insurance policy with MACo. No duty to defend was ever triggered, and MACo's denial of coverage was proper.

¶22 *2. Did the District Court err by considering the insurance policy's Exclusion 23 when granting summary judgment?*

¶23 Because Exclusion 12 provided an independently sufficient basis for the District Court to grant summary judgment in favor of MACo, there is no need to address its conclusion that Exclusion 23 provided an additional basis upon which to deny coverage and to grant summary judgment. For this reason, we decline to reach the issue of whether Exclusion 23 was properly considered by the District Court.

## CONCLUSION

¶24 We hold that the District Court did not err by granting summary judgment. There was no genuine issue of material fact that Coleman's claims 1-3 were excluded from coverage by Exclusion 12. We decline to reach the issue of whether Exclusion 23 should have been considered as a basis for denying coverage. Affirmed.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER
/S/ JIM RICE